**Mark PASTORE, Plaintiff**

v.

**WITCO CORPORATION SEVERANCE PLAN, Employee Benefits Committee Of The Witco Corporation Severance Plan, In Its Capacity As Plan Administrator, Defendants**

**No. 01 CIV. 3257(SCR).**

United States District Court, S.D. New York.

June 21, 2005.

Laurent S. Drogin, Tarter, Krinsky & Drogin L.L.P., New York City, for Plaintiff.

Laura Sack, Kauff, McClain & McGuire, L.L.P., New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

### A. Factual Background

Mark Pastore ("Pastore" or "Plaintiff") was employed by Witco Corporation ("Witco") from 1987 until he resigned in 2000. The Witco Corporation Severance Plan ("Severance Plan") is an "employee welfare benefit plan," as defined under the Employment Retirement Security Act ("ERISA"), 29 U.S.C. § 1001, *et. seq.* The Employee Benefits Committee of the Witco Corporation Severance Plan ("Committee"; the Severance Plan and the Committee are collectively referred to herein as "Defendants") is the Plan Administrator of the Severance Plan.

Plaintiff's first position with Witco was as a bench chemist. After receiving sever-al promotions and salary increases, Plaintiff was appointed Global Market Manager for Fuel Additives. From 1994 until his resignation in 2000, Plaintiff's office was located in Greenwich, Connecticut.

The Severance Plan became effective on January 1, 1997. On or about June 17, 1999, Witco established the Change in Control Severance Program ("CIC Program"). The CIC Program explicitly stated that it was established under, and governed by, the Severance Plan. In addition, it provided severance benefits to any eligible employee who resigns his or her employment after being required to locate to an office which is more than fifty miles from the employee's worksite prior to the change in control or more than fifty miles from the employee's principal residence.[1]

Effective September 1, 1999, Witco merged with Crompton & Knowles, forming an entity known as Crompton Corporation ("Crompton"). The merger was deemed a "change in control" for purposes of the CIC Program. At all relevant times, Plaintiff worked in Crompton's Petroleum Additives Group.

In the spring of 2000, Plaintiff learned that Crompton was planning to relocate certain members of its Petroleum Additives Group from its Greenwich facility to a facility in Middlebury, Connecticut. On or about May 20, 2000, Plaintiff advised his supervisor, Dr. Sean O'Connor, that he did not wish to relocate to Middlebury. Following discussions between Plaintiff and O'Connor, O'Connor sent a letter[2] to Pastore that offered the Plaintiff the opportu-

---

1. Specifically, the CIC Program provides:

 ... an Eligible Employee whose employment terminates within one year following a Change in Control...shall receive Severance Benefits pursuant to this Program if:...An Eligible Employee resigns his or her employment with the Company, or any successor, after being required to relocate to an office which is more than 50 miles from the Eligible Employee's work site immediately prior to the Change in Control...or which is more than 50 miles from the Eligible Employee's principal residence.

2. The full text of the letter is as follows:
 Mark:
 This is to confirm our discussions regarding the impact on you and your family of the relocation of the Petroleum Additives Busi-

nity to remain with the team by establishing a home office as his base of operations rather than working in Middlebury.

By letter dated July 25, 2000, Plaintiff resigned his employment from Witco, effective August 25, 2000. In a letter from Plaintiff's counsel dated December 5, 2000, Plaintiff submitted a claim for benefits under the CIC Program. By letter dated February 15, 2001, the Committee, by a unanimous vote of its four members, denied Plaintiff's claim for severance benefits, concluding that Plaintiff was not entitled to benefits because he had not been required to relocate to an office more than 50 miles from his prior work site or his principal residence.

### B. Procedural Background

The Plaintiff filed his complaint in this action on or about April 19, 2001, and amended it twice thereafter—on or about April 23, 2001 and or about January 4, 2002. Plaintiff's claim alleges multiple ERISA violations: 1) failing to grant Plaintiff severance benefits to which he was entitled; 2) failing to adhere to ERISA's disclosure requirements with respect to the Summary Plan Description; and 3) failing, intentionally and in bad faith, to provide Plaintiff, in a timely fashion, with a copy of the Severance Plan.

On May 15, 2001, Defendants filed a motion to dismiss. On September 21, 2001, Judge Barrington Parker, Jr. denied their motion with leave to renew pursuant to Fed.R.Civ.P. 56.

On June 28, 2002, Defendants moved for summary judgment on all three causes of action on the grounds that: 1) Plaintiff was not eligible for severance benefits under the terms of the Change in Control Severance Plan; 2) the Summary Plan Description was not defective and there was no evidence of detrimental reliance, prejudice, or other extraordinary circumstances related to the SPD; and 3) there was no evidence that the Committee acted in bad faith or that Plaintiff was prejudiced by the delay in his receipt of the Severance Plan.

The case was assigned to this court on October 15, 2003 and, on May 11, 2004, Defendants' motion for summary judgment was referred to Magistrate Judge Smith for a report and recommendation. On August 20, Judge Smith issued her report and recommendation ("R & R"), specifically recommending that Defendants' motion for summary judgment be denied with respect to all three claims. The Defendants filed objections to the R & R on September 14, 2004, to which the Plaintiff replied on October 4, 2004.

For the reasons set forth below, Judge Smith's recommendation is respectfully rejected, and Defendants' motion for summary judgment is granted.

### II. Analysis

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate

---

ness Team to Middlebury. We value your continuing participation on the team and, at the same time, understand your personal constraints. In light of these considerations, I am pleased to offer you the opportunity to remain with the team by:

 (a) establishing a "home office" as your base of operations. This, of course, would be done at company expense for the required equipment—phones, fax, computer, etc., and,

 (b) limiting your travel to Middlebury to, on average, 4 days per month.

Mark, we believe this arrangement will allow for your continued contribution to the success of our business. We sincerely hope it is responsive to your personal needs in a way that is satisfactory to you and your family.

I look forward to your favorable response by June 30, 2003.

when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ In reviewing an R & R, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Nelson v. Smith*, 618 F.Supp. 1186, 1189 (S.D.N.Y.1985) (citations omitted). *See also Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991) (court may accept report if it is "not facially erroneous"). However, a district court judge is required to make a de novo determination as to the aspects of the report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673–674, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997). Here, as mentioned, Defendants have objected in a timely fashion to Magistrate Judge Smith's recommendation.

### B. Plaintiff's Severance Benefits Claim

■ As Judge Smith pointed out, the threshold issue is the appropriate standard of review that this court must apply in reviewing the Committee's decision. Where a benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to con-

strue the terms of the plan, denials of benefits are subject to the deferential arbitrary and capricious standard and may be overturned only if the decision is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441–42 (2d Cir.1995), *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Although there are no "talismans by which a plan could trigger the highly deferential 'arbitrary and capricious' standard of review," *Pagan*, 52 F.3d at 442, the Second Circuit has found that plan administrators have sufficient discretionary authority to justify arbitrary and capricious review. *See, e.g., Mario v. P & C Food Mkts.*, 313 F.3d 758, 763 (2d Cir. 2002) (holding that language in the relevant agreement granting the pension administrator authority to "review all denied claims for benefits under the Plan" and resolve "questions as to the proper interpretation of the Plan with respect to eligibility for benefits or otherwise" was sufficient to trigger the arbitrary and capricious standard of review); *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1270 (2d Cir. 1995) (holding that the arbitrary and capricious standard applies when the Plan states that "[t]he Retirement Committee shall pass upon all questions concerning the application or interpretation of the provisions of the Plan.").

As Judge Smith noted, Section 3.1 of the Severance Plan provides that "[t]he determination of whether Severance Benefits will be granted to any Eligible Employer...shall be made in the sole discretion of the Committee in each individual or particular circumstance." Section 4.1 further provides that "[t]he Committee shall determine, in its sole discretion, the amount and

type of Severance Benefits, if any, that shall be granted to an Eligible Employee." Under Section 6.1 of the Plan, the Committee has the "exclusive right, power and authority to: (a) interpret, in its sole discretion, any and all of the provisions of the Plan." This language, by itself, undoubtedly confers adequate discretionary authority to the Committee in construing the Severance Plan to justify arbitrary and capricious review. The issue here, however, is whether the Committee has similar discretion in construing the terms of the CIC Program.

Defendants argue that they are entitled to the arbitrary and capricious standard of review because the above-quoted language of the Severance Plan grants the Committee absolute discretion to make severance benefit determinations. Plaintiff argues that de novo review is appropriate because the CIC Program amended the Severance Plan, effectively removing the Committee's discretion thereto. In effect, therefore, Plaintiff argues that his claim concerned a non-discretionary provision of the CIC Program.

Judge Smith concluded that the relevant portion of the CIC Program is a departure from the terms of the Severance Plan because it enumerates criteria under which an Eligible Employee might be entitled to severance benefits. Judge Smith found that, although the CIC Program is "established under" and "governed by" the Severance Plan, the plan documents do not make clear whether the CIC Program in any way amended or modified the Severance Plan such that it operated to remove discretionary authority from the plan administrator. Finding that the parties' dispute as to whether the CIC Program amended the Severance Plan is a genuine issue of fact that is properly resolved by the fact finder, Judge Smith recommended that Defendants' motion for summary judgment on this claim be denied.

■■■ This court disagrees with Judge Smith's analysis. First, it is important to note that there is no right to a jury trial in an action for benefits under an ERISA plan. *See DeFelice v. American Int'l Life Assur. Co.*, 112 F.3d 61, 64 (2d Cir.1997). Moreover, in resolving a summary judgment motion in an ERISA denial of benefits claim, "the Court determines the appropriate standard of review." *James v. New York City Dist. Council of Carpenters' Benefits Funds*, 947 F.Supp. 622, 627 (E.D.N.Y.1996).

■■ In determining the standard of review, the court finds that the CIC Program did not amend the Severance Plan and, since the Severance Plan clearly grants the Committee discretionary authority, the Committee's decision denying the Plaintiff benefits should be subject to arbitrary and capricious review. Specifically, it is clear to this court that the CIC Program is a companion, rather than an amendment, to the Severance Plan. By itself, the Severance Plan does not contain any formula or other method for determining eligibility for benefits. Rather, the Severance Plan requires that the Committee look to language in the CIC Program to determine Plaintiff's eligibility for severance benefits.

Moreover, and as mentioned, the CIC Program expressly states that it was "established under the Witco Corporation Severance Plan and is governed by the terms of that Plan." The Severance Plan provides that "[f]rom time to time, the Committee may issue policies detailing the Severance Benefits to be provided to employees or groups of employees whose employment is terminated under certain circumstances." In light of this language, the CIC Program cannot reasonably be construed as an amendment to the Sever-

ance Plan. *cf. Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 85 (2d Cir.1998) (" 'We are unwilling to contort the plain meaning of 'amendment' so that it includes the valid exercise of a provision which [is] already firmly ensconced in the pension document.' ") (quoting *Dooley v. American Airlines, Inc.*, 797 F.2d 1447, 1452 (7th Cir.1986)).[3]

Judge Smith further concluded that, even under the arbitrary and capricious standard, Defendants would not be entitled to summary judgment. Specifically, Judge Smith objected to what was, in her view, Defendants' after the fact justification of the Committee's denial that the "required to relocate" language is satisfied only when eligible employees are required first to relocate physically, and then to resign, in order to be entitled to severance benefits. But as Judge Smith herself pointed out, the Committee based its conclusion on the ground that the Plaintiff was not *required* to relocate. Defendants insist that they made no such argument but, regardless of whether they did or not, the issue is whether the Committee's decision, not the Defendants' argument made in the course of litigation, was arbitrary and capricious.

■ The issue, therefore, is whether the Committee's determination that Plaintiff was not "required to relocate" was arbitrary and capricious. This court finds that

it was not. Although Plaintiff seems to view the 'required to relocate' language as ambiguous and in need of further definition in the CIC Program or Severance Plan, the court finds the meaning of the phrase to be easily understood by reference to a dictionary. One is 'required' to 'relocate' if he or she is obligated or compelled to move or establish oneself in a new place. Here, Plaintiff was offered the opportunity to work from his home instead of moving along with the rest of his team to the Middlebury office and one could not reasonably argue that the Committee's determination that Plaintiff was not, as a result, required to relocate, was arbitrary and capricious.

■ Judge Smith also concluded that the Committee's finding that Pastore was not required to relocate was not based on adequate investigation or documentation and was, therefore, not supported by substantial evidence. Again, this court must disagree. It is undisputed that the Committee reviewed O'Connor's June 19, 2000 letter, which set forth an arrangement by which the Plaintiff could work primarily from home, as well as Plaintiff's resignation letter, which confirmed that such an arrangement had been offered. These letters setting forth the existence and terms of the proposed arrangement were adequate evidence on which the Committee

---

**3.** In his response to Defendants' objections to the R & R, Plaintiff argues that the CIC Program must have been an amendment because the Severance Plan grants the Committee the authority to do only three things—issue policies, amend or terminate the Plan. Plaintiff argues that the CIC Program cannot be considered a 'policy' because of a provision in the CIC Program that states that "Eligible Employees are not also eligible to receive severance benefits under any other Witco plan, *program*, practice or *policy*.... " (emphasis added). According to Plaintiff, this use of the terms 'program' and 'policy' indicate that they have different meanings, and therefore

cannot be used interchangeably when construing relevant plan documents. This process of elimination argument is unpersuasive, however. Similar logic could also lead to the conclusion that a 'program' is also different from an 'amendment' and that, as a result, one could argue that the Committee was acting outside its authority in creating the CIC Program, and that the CIC Program is therefore somehow invalid. But presumably Plaintiff would not appreciate such a result. Contrary to Plaintiff's argument, the court sees no reason why it is necessary to harmonize the language in these different documents in this way.

could confirm that such an arrangement had been offered.

For these reasons, Judge Smith's recommendation that Defendants' motion for summary judgment with respect to the benefits claim be denied cannot be accepted. Rather, Defendants' motion, with respect to this claim, must be granted.

### C. Plaintiff's Summary Plan Description Claim

ERISA provides that "[t]he administrator shall furnish to each participant...a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title" either within 90 days after an employee becomes a participant or, if later, within 120 days after the Plan becomes subject to ERISA. 29 U.S.C. § 1024(b)(1). An acceptable summary plan description must detail, *inter alia*, a description of "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Because summary plan descriptions are an employee's primary source of information regarding employee benefits, employees are entitled to rely on employment plan descriptions contained therein. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–08 (2d Cir.1990).

Plaintiff's second cause of action alleges that Defendants violated § 1022 of ERISA because the summary plan description given to Plaintiff did not advise him of circumstances that might result in disqualification, ineligibility, or denial or loss of benefits. Specifically, Plaintiff contends that nothing in the SPD advised the Plaintiff that his rights under the CIC Program would be forfeited in the event that he declined an offer to work from his home.

The SPD does explicitly state that "[w]hether or not the Company will provide you with Severance Benefits under the Plan upon your termination of employment is a matter solely within the discretion of the Committee that administers the Plan...." Moreover, the SPD confirms that "Severance Benefits are not available following...your termination of employment in connection with...a merger or other combination...unless the Company expressly provides in writing that benefits will be awarded as a result of such termination...."

Because, in her view, the CIC Program constituted an amendment to the Severance Plan, Judge Smith determined that the Defendants were required to provide notice to plan participants of the change, and that Defendants' failure to do that, or to modify the Severance Plan to reflect the contents of the CIC Program, could reasonably be construed to violate ERISA, thereby precluding summary judgment for Defendants on this claim.

The standard of review to be applied when the question is whether the SPD complies with ERISA's disclosure requirements has not been decided by the Second Circuit. *See Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir.2003). But under either standard, this court finds that the SPD failed to satisfy ERISA's disclosure requirements.

■ As discussed, this court disagrees that the CIC Program constituted an amendment to the Severance Plan. Therefore, Defendants were not obligated to provide a "summary of any material modification in the terms of the plan," as required by 29 U.S.C. § 1022(a). That said, Defendants were, at all times, under a continuing obligation to provide an SPD that set forth "the plan's requirements respecting eligibility for participation and benefits" and "circumstances which may result in disqualification, ineligibility, or

denial or loss of benefits." 29 U.S.C. § 1022(b). Without any information on the terms and conditions of employees' eligibility for benefits under the CIC Program, the SPD failed to satisfy ERISA's disclosure requirements. Therefore, after the CIC Program was created, Defendants were under an obligation to provide a summary of relevant provisions of that newly created aspect of the Severance Plan, presumably including the required to relocate standard. But this they apparently did not do.

■ That said, Defendants argue that, even assuming that the SPD was defective, Plaintiff has not demonstrated that he was prejudiced by the deficiencies in the SPD and therefore has not stated a valid claim. In order to make a showing of prejudice, the plan participant or beneficiary must show that he was "likely to have been harmed as a result of a deficient SPD." *Burke*, 336 F.3d at 113. "Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error." *Id.*

■ Given the failure of the SPD to summarize relevant portions of the CIC Program, Plaintiff has shown a likelihood of harm. That said, Defendants argue that, even assuming Plaintiff can show likelihood of prejudice, they can rebut such a showing because it is undisputed that Plaintiff learned of the 'required to relocate' requirement of the CIC Program when he was provided and admittedly read a copy of the "Change in Control Severance Program Description" before he announced his resignation.[4]

The court agrees. Plaintiff's review of this Description is adequate to rebut Plain-

tiff's showing of likelihood of prejudice because it made Plaintiff aware of the relevant provisions at issue. *See Burke*, 336 F.3d at 114 (implying that a newsletter and 'benefits update' that was distributed by plan administrator to plan participants would have rebutted likelihood of prejudice if plan administrator had established that the plan participants at issue had actually read the documents).

Plaintiff objects to this by arguing that his interpretation of the relevant provisions suggested to him that he was entitled to benefits, but this argument is of no moment. Defendants' obligation is to take reasonable steps to ensure that plan participants are aware of all relevant eligibility requirements—not to ensure that plan participants accurately apply those requirements to the facts of their cases.

For these reasons, Defendants' motion for summary judgment with respect to Plaintiff's SPD claim, contrary to Judge Smith's ultimate recommendation, must be granted.

### D. Plaintiff's Statutory Penalties Claim

ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description,...or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Plaintiff's third cause of action alleges that Defendants violated ERISA by failing to provide Plaintiff, in a timely fashion, with a copy of the Severance Plan and, as a result, Plaintiff is entitled to statutory penalties.

4. Defendants argue that Plaintiff's likelihood of prejudice is also rebutted by the fact that he was told by O'Connor, before he resigned, that he was not eligible for benefits under the CIC Program.

"Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. 1132(c)(1).

 In determining whether to assess a penalty under § 1132(c)(1), courts have considered such factors as bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary. *See Pagovich v. Moskowitz,* 865 F.Supp. 130, 137 (S.D.N.Y.1994). The first factor—bad faith—is one of the most significant factors, because the statutory penalty provision is in the nature of punitive damages and designed more to punish the intransigent administrator and to teach ERISA fiduciaries a needed lesson than to compensate the plan participant for actual loss. *See Kascewicz v. Citibank, N.A.,* 837 F.Supp. 1312, 1322 (S.D.N.Y.1993).

In December 2000, Plaintiff's counsel sent Defendants a letter requesting the "latest updated Summary Plan Description, Plan Description,... or other instruments under which the Plan is established or operated." In that letter, counsel erroneously referred to the "Change in Control Plan," which, of course, is actually called the CIC *Program.* In response, Defen-

dants sent Plaintiff a copy of the SPD, but not the Severance Plan.

Judge Smith recommended that Defendants' motion for summary judgment on this claim be denied because Judge Smith found evidence of bad faith. Specifically, Judge Smith pointed to the fact that, in a prior letter from Plaintiff's counsel to Defendants, dated November 9, 2000, Plaintiff's counsel expressly indicated that he had been retained for the purpose of determining Plaintiff's rights with respect to the "Witco Corporation Change in Control Severance Program," which counsel correctly named in that letter. Judge Smith concluded that this letter undermines Defendants' claim not to have understood what documents were actually being requested in the subsequent December letter. Judge Smith also noted that the language of Defendants' December letter was as broad as possible, seeking everything that ERISA permits.

 This court, contrary to Judge Smith's analysis, finds that there is nothing in the record to suggest that Defendants' failure to turn over the Severance Plan was the result of bad faith. First, this court does not understand how Plaintiff's reference in the November letter to the CIC Program document helps clarify Plaintiff's subsequent request for the *Severance Plan,* which is a different document.[5] Although Defendants could, in theory, have responded to Plaintiff's letter by turning over every possible relevant document, Defendants' provision of the SPD was reasonably responsive to the December letter, which explicitly referred to "Description[s]" and did not clearly state which document(s) Plaintiff was requesting.

**5.** It is perhaps worthwhile to note that this court, in reviewing the R & R and the objections thereto, also had considerable difficulty sorting out which documents Plaintiff was requesting and which documents he already

had. As such, it is not difficult to believe that there may have been genuine confusion surrounding Plaintiff's request when it was received by Defendants.

Moreover, Plaintiff's letter responding to Plaintiff's counsel's request, which was written by Crompton employee Debra Verbeke, explicitly invited counsel to contact her for further assistance, which Plaintiff could have done with minimal effort, and which hardly suggests a bad faith effort to conceal documents from Plaintiff.[6] Because neither Plaintiff's counsel nor the Plaintiff made an additional request for the Severance Plan document, Plaintiff is left to argue that Defendants deserve statutory penalties after failing to turn over the document Plaintiff was apparently seeking when Plaintiff failed to follow up on his request. These facts preclude any reasonable fact finder from justifying the imposition of statutory penalties in this case.

Therefore, Defendants' motion for summary judgment with respect to Plaintiff's third claim, contrary to Judge Smith's recommendation, must also be granted.

## III. Conclusion

Having reviewed the R & R and conducted a *de novo* review of Defendants' objections, this court respectfully rejects Judge Smith's recommendation that Defendants' motion for summary judgment be denied.

Accordingly, Defendant's motion for summary judgment is GRANTED.

The clerk of the court is directed to CLOSE this case.

It is so ordered.

---

6. In his response to Defendants' Objections, Plaintiff argues that the court could not expect him to have made an additional request for documents because he could not be expected to have known that there were other documents that he had not received. This argument is entirely unpersuasive. Plaintiff was represented by counsel at the time of his requests and surely an attorney can be expected to know the difference between the Severance Plan and the SPD.