Mark PASTORE, Plaintiff–Appellant,

v.

WITCO CORPORATION SEVERANCE PLAN and Employee Benefits Committee of the Witco Corporation Severance Plan, in capacity as Plan Administrator, Defendants–Appellees.

No. 05–4157.

United States Court of Appeals, Second Circuit.

Aug. 10, 2006.

Laurent S. Drogin, Tarter Krinsky & Drogin LLP (David S. Rich, of counsel), New York, NY, for Appellant.

Lyle S. Zuckerman, Kauff McLain & McGuire LLP (Laura Sack, of counsel), New York, NY, for Appellees.

PRESENT: ROBERT D. SACK, ROBERT A. KATZMANN, Circuit Judges, and J. GARVAN MURTHA,* District Judge.

## SUMMARY ORDER

The plaintiff, Mark Pastore, was employed by the Witco Corporation ("Witco") and its corporate successors from 1987 until his resignation in 2000. Witco sponsored an employee benefit plan called the Witco Corporation Severance Plan (the "Plan"), which, together with the Plan's Employee Benefits Committee (the "Committee"), is the defendant in this case. Pursuant to the Plan, Witco offered severance benefits to certain employees whose employment ended within one year of a change in control of the company. Employees were eligible for such severance benefits if, among other grounds, they resigned their employment "after being required to relocate to an office" that was more than 50 miles from their previous office or from their principal residence.

* Of the United States District Court for the District of Vermont, sitting by designation.

In September 1999, Witco merged with another corporation. The parties agree that this merger was a "change in control" for purposes of the Plan. Early in 2000, a Witco manager stated at a meeting attended by Pastore that Witco was planning to relocate Pastore's work group from Greenwich, Connecticut, to Middlebury, Connecticut. The Middlebury facility is 53 miles from the Greenwich facility and 77 miles from Pastore's home in Suffern, New York.

The parties dispute the precise sequence and nature of subsequent events. They agree, however, that: (1) Pastore expressed to his supervisor, Dr. Sean O'Connor, his displeasure with the impending move; (2) O'Connor later wrote to Pastore offering him "the opportunity to remain with the team by . . . establishing a 'home office' as your base of operations . . . and [ ] limiting your travel to Middlebury to, on average, 4 days per month"; and (3) on July 25, 2000, Pastore submitted his written resignation, in which he acknowledged that he had been offered the option of working from home but stated that "[i]n order to . . . be a valued member of our team, I would be required to work in the head office with the rest of the business group and other executives."

Pastore, through counsel, requested severance benefits from Witco pursuant to the Plan. Witco responded that Pastore was ineligible for the benefits because he had been offered the option of working from home and therefore had not been "required to relocate." Pastore then submitted a formal request for benefits to the Committee. He argued that he was eligible for benefits notwithstanding Witco's offer of a "home office," because (1) according to the offer, Pastore would still be required to report to Middlebury an average of four days per month; (2) Witco had failed to determine whether Pastore had enough physical space in his home to set up a home office; and (3) Pastore thought that it would be impossible for him to "successfully perform his duties and responsibilities as a 'telecommuter.' "

The Committee discussed Pastore's claim in a meeting of February 14, 2001, attended by all its members. By letter dated February 15, 2001, the Committee denied Pastore's claim. The letter said, "Mr. Pastore was not required to relocate to an office more than 50 miles from his principal residence or his prior work location" because he "was permitted to work from his home," in that Witco had offered to set up, at its expense, a "home office . . . for use as his 'base of operations.' " (Emphasis deleted).

Pastore began this action against the Committee and the Plan in the United States District Court for the Southern District of New York on April 19, 2001. He asserts principally that the defendants wrongfully denied him employee benefits to which he was entitled in violation of section 502(a)(1)(B) of the Employee Retirement Insurance Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). On June 27, 2005, the district court, rejecting the recommendations of a magistrate judge, granted the defendants' motion for summary judgment. *See Pastore v. Witco Corporation Severance Plan,* 388 F.Supp.2d 212 (S.D.N.Y.2005).

■ When, as here, an ERISA plan grants discretion to a plan administrator such as the Committee, federal courts review its decisions regarding plan benefits under the "arbitrary and capricious" standard. *See, e.g., Garcia Ramos v. 1199 Health Care Employees Pension Fund,* 413 F.3d 234, 237 (2d Cir.2005). Denials of benefits "may be overturned as arbitrary and capricious only if the decision is without reason, unsupported by substantial evidence or erroneous as a matter of law."

*Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir.2002) (internal quotation marks and citations omitted).

We think that the Committee's decision to deny benefits to Pastore was arbitrary and capricious in that it was rendered, in effect, "without reason." *Id.* In denying Pastore's benefits request, the Committee stated only that Pastore was not "required to relocate" because he was "permitted to work from his home." It is undisputed, however, that Pastore would have been required to continue to participate in a work group that was located in Middlebury and to report to Middlebury an average of four times per month. The question was whether such an arrangement constituted a requirement to relocate. The Committee did not address this question; instead it stated in a conclusory fashion that Pastore had been "permitted to work from his home." This explanation was insufficient. *See* 29 U.S.C. § 1133(1) (plan administrators must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant").

We think, moreover, that the Committee acted arbitrarily and capriciously in failing to consider whether Pastore had enough space in his home for an office or whether he could "successfully perform his duties and responsibilities as a 'telecommuter.'" *See Zervos v. Verizon New York, Inc.*, 277 F.3d 635, 647 (2d Cir.2002) (claims process was arbitrary and capricious when, among other things, administrator failed to give proper consideration to testimonial evidence); *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 773 (10th Cir.2004) ("[F]iduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute that theory."). The defendants admit that the Committee reviewed only the correspondence between Pastore and Witco and did not investigate the dimensions of Pastore's home or the effects of working from home on Pastore's job performance. It was required to consider Pastore's arguments and evidence. *See Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996) (decision to deny benefits must be "based on a consideration of the relevant factors" (internal quotation marks and citations omitted)).

■ When a plan administrator "fails to provide an adequate reasoning, the proper remedy in an ERISA case ... is to remand for further findings or explanations, unless it is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998) (internal quotation marks and citations omitted). Similarly, when an administrator fails to consider relevant evidence, we "remand to the [administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a useless formality." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995) (internal quotation marks and citations omitted). We think a remand to the Committee is the appropriate remedy in this case. In so concluding, we neither express nor mean to imply any opinion as to whether denial of severance benefits to Pastore, after proper explanation and investigation, would be reasonable.

We have considered Pastore's remaining arguments on appeal with respect to other matters and find them to be without merit.

The district court's judgment as to those issues will be affirmed.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings.