**Sally J. BURKE, Plaintiff–Appellant,**

v.

**KODAK RETIREMENT INCOME PLAN and KODAK RETIREMENT INCOME PLAN COMMITTEE, Defendants–Appellees.**

**Docket No. 02–9051.**

United States Court of Appeals, Second Circuit.

Argued: April 30, 2003.

Decided: July 17, 2003.

George A. Schell, Schell & Schell, P.C., Fairport, N.Y. (Jennifer M. Hoeling, on the brief), for Plaintiff–Appellant.

Eric J. Ward, Ward Norris Heller & Reidy, LLP, Rochester, N.Y. (Heather D. Kenny, of counsel), for Defendants–Appellees.

Before: MINER, McLAUGHLIN and POOLER, Circuit Judges.

MCLAUGHLIN, Circuit Judge.

Plaintiff Sally J. Burke sued the Retirement Income Plan Administrators of her deceased husband's employer, the Eastman Kodak Company ("Kodak"), for denying her survivor income benefits. She alleged that defendants Kodak Retirement Income Plan ("KRIP") and Kodak Retirement Income Plan Committee ("KRIP-CO") (collectively, the "Plan Administrators") based their denial on a deficient Summary Plan Description ("SPD") in violation of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.

The United States District Court for the Western District of New York (Larimer, J.) granted defendants summary judgment and dismissed the complaint. The court held that the SPD complied with ERISA's disclosure requirements. The court further concluded that even if the SPD were defective, Mrs. Burke could not show that she relied on the SPD to her detriment. We disagree with both conclusions.

The SPD was defective for omitting a critical restriction on Mrs. Burke's eligibility for survivor income benefits as a domestic partner. Moreover, requiring plan participants or beneficiaries to show detrimental reliance to recover for a deficient SPD contravenes ERISA's objective to promote distribution of accurate SPDs to employees. We now adopt a prejudice standard and find that Mrs. Burke was prejudiced as a matter of law.

## BACKGROUND

Kenneth Burke was a Kodak employee for twenty-seven years. Before their marriage on May 17, 1999, Mr. and Mrs. Burke lived together for eight years as domestic partners. In 1994, Mrs. Burke suffered a physically and mentally debilitating stroke. In the fall of 1999, after the couple had been married for less than six months, Mr. Burke died of lung cancer.

Mr. Burke was a participant in Kodak's pre-retirement Survivor Income Benefits ("SIB") plan, which provided payments to spouses, domestic partners, dependent children or dependent parents upon the death of the employee. As required by ERISA, Kodak distributed an SPD contained in an approximately 300 page employee handbook, summarizing its employee benefits plan (the "plan"), including SIB. The plan and sixteen sections of the SPD explicitly require "domestic partners"

to file a joint affidavit on a form provided by the Plan Administrator if they wish to be eligible for various types of benefits. Significantly, the section of the handbook that deals with SIB fails to mention the affidavit requirement.

To publicize the benefits available to domestic partners, Kodak circulated a 1996 Employee Benefits Newsletter and a 1997 Benefits Update. The Newsletter and Update explained that domestic partners had to file an affidavit of domestic partnership to qualify for certain employee benefits, including SIB. After the Newsletter and Benefits Update were circulated, Kodak issued a revised version of its SPD. The SIB section of the new SPD, however, omitted the affidavit requirement.

The week after Mr. Burke's death, Kodak sent Mrs. Burke a letter describing the benefits available to a surviving spouse of more than one year. In response, Mrs. Burke called Kodak to explain that she had been married for less than a year. By a second letter, Kodak informed Mrs. Burke that, because she was married for less than a year, she was ineligible for pre-retirement SIB. This letter referred to page ninety-eight of an enclosed handbook for spousal eligibility requirements.

The handbook also happened to contain a paragraph stating that aggrieved beneficiaries "should" file an appeal of Kodak's initial denial within ninety days. In this case, ninety days from Kodak's initial denial was February 21, 2000. Almost five months later, Mrs. Burke finally appealed to the Plan Administrators.

In her appeal, Mrs. Burke included an affidavit describing her domestic partnership status. In her appeal letter, she cited her distraught "emotional state ... upon the death of her husband" as the reason for her failure to appeal within the ninety-day limitations period. Unmoved, the

Plan Administrators denied her appeal as untimely and further stated that, even had her appeal been timely, Mrs. Burke was ineligible for SIB as a domestic partner because the Burkes never filed the joint affidavit required by the plan.

Mrs. Burke then filed this ERISA action. Her claim is that the SPD was deficient because it failed to set forth the affidavit requirement in the section dealing with SIB. After discovery, Kodak moved for summary judgment.

The district court rejected the Plan Administrators' attempt to invoke the ninety-day limitation. In the court's view, Kodak's notice to Mrs. Burke of the ninety-day period was inadequate. The court also held that Mrs. Burke could qualify for benefits both as a surviving spouse and as a domestic partner. It therefore reached the merits of her claim, but affirmed the Plan Administrators' denial of survivor income benefits because the Burkes had failed to comply with the domestic partnership affidavit requirement. It also held, in the alternative, that even if the SPD was deficient, Mrs. Burke failed to demonstrate that she relied to her detriment on the SPD. *See Burke v. Kodak Ret. Income Plan,* 217 F.Supp.2d 384, 389–91 (W.D.N.Y.2002).

Mrs. Burke now appeals.

## DISCUSSION

Preliminarily, the Plan Administrators argue that: (1) Mrs. Burke's claims were barred by her failure to exhaust her administrative remedies; and (2) her application for survivor income benefits as a domestic partner was moot. We find these arguments without merit.

I. *Exhaustion of Administrative Remedies*

The Plan Administrators claim that Mrs. Burke failed to exhaust her administrative remedies and thus the district court erred in reaching the merits of her ERISA claim. Mrs. Burke concedes, as she must, that she appealed KRIP's denial of benefits after the ninety-day limitations period. The district court, nevertheless, refused to enforce the ninety-day limitation and we agree.

■ Whether Mrs. Burke exhausted her administrative remedies under ERISA is a question of law we review *de novo*. *See Kinkead v. SW Bell Corp. Sickness & Accident Disability Benefit Plan,* 111 F.3d 67, 68 (8th Cir.1997) ("Exhaustion is a threshold legal issue we review *de novo* ").

■ We require the exhaustion of administrative remedies for the denial of ERISA benefits. *See, e.g., Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 511 (2d Cir.2002). The ERISA regulations adopted by the Department of Labor ("DOL") allow employers to impose a time limit on the right to appeal, so long as it is not shorter than sixty days. *See* 29 C.F.R. § 2560.503–1(h)(2)(i). Where a claimant fails to appeal a denial of benefits under an employee plan within the prescribed time limit, the court will generally not reach the merits of her claim. *See, e.g., Chapman,* 288 F.3d at 511.

■ Under the ERISA statute and the DOL regulations, the denial must notify the claimant of appeal procedures under the plan. *See* 29 U.S.C. § 1133 & 29 C.F.R. § 2560.503–1. A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect her claim, including the time limits applicable to administrative review. *Id.* A notice that fails to substantially comply with these requirements does not trigger a time bar contained within the plan. *See White v. Jacobs Eng'g Group*

*Long Term Disability Benefit Plan,* 896 F.2d 344, 350 (9th Cir.1989).

Kodak's notice was inadequate for two reasons.

■ First, Kodak's initial denial letter does not expressly say that Mrs. Burke had ninety days to appeal. Rather, the letter contains a cross-reference to page 98 of the handbook, which deals with spousal eligibility. That handbook also contains an appeals section—not on page 98, but on page 140—stating that an aggrieved beneficiary "should" appeal "within 90 days." This section, however, does not help Kodak. Based on the denial letter's exclusive reference to spousal eligibility, Mrs. Burke's focus in turning to the handbook would justifiably have been on her eligibility, not on the time limit for appeals. *See Ross v. Diversified Benefit Plans, Inc.,* 881 F.Supp. 331, 335 (N.D.Ill.1995) (notice insufficient where denial letter "did not mention the Plan's appeal procedure or specifically refer the claimant to the Plan book for information about the appeal procedure").

The Plan Administrators argue that the denial letter need not inform an individual of her appeal rights provided that the materials accompanying the letter do so. Their position, however, is disingenuous. The cases the plan administrators cite for this proposition involved denial letters that *contained* notice of appeal rights. *See White,* 896 F.2d at 347 (denial letter "informed White that he had 60 days to appeal"); *Gruber v. Unum Life Ins. Co. of Am.,* 195 F.Supp.2d 711, 715 (D.Md.2002) (denial letter "stated that Plaintiff could have the decision reviewed if she made a request in writing within 60 days"); *Kenavan v. Empire Blue Cross & Blue Shield,* 1996 WL 14446, at *3 (S.D.N.Y. Jan.16, 1996) (explanation of benefits form contained the following notice: "IMPORTANT: if you do not agree with the

amount approved you may ask for a review. To do this you must write to us [within six months]").

Secondly, even if Kodak's denial letter had cross-referenced the time limitation's provision in the handbook, the language requiring appeal within ninety days is opaque:

**If you remain dissatisfied and wish to appeal, you should, within 90 days of the date the claim was denied (or within 90 days of the date the claim is assumed to be denied), write a letter to the plan administrator asking for a review.**

(bold and italics in original).

The Kodak handbook's use of the word "should" is grossly uninformative. *Cf. Harris County Hosp. Dist. v. Shalala,* 863 F.Supp. 404, 410 (S.D.Tex.1994), *aff'd,* 64 F.3d 220 (5th Cir.1995) ("*Should,*" in administrative manual, "is mandatory only when used as the past tense of *shall.* Otherwise, should is precatory.") (emphasis in original). It is not necessary to hold that "should" can never be construed as mandatory. *See Doe v. Hampton,* 566 F.2d 265, 281 (D.C.Cir.1977) (use of "should" rather than "shall" or "must" is not automatically determinative of whether regulation is mandatory or merely precatory). In this case, however, we decline to equate "should" with "shall" or "must."

Here, Kodak could easily have used unambiguous mandatory language. *See, e.g., Carpenter v. Frontier Corp.,* No. 99–CV–6329T, slip op. at 6 (W.D.N.Y. Mar. 30, 2001) (finding that the plaintiff failed to exhaust her administrative remedies where the denial of claim letter stated that "[s]hould you desire a review, you *must* send a written request …") (emphasis added); *see also Gruber,* 195 F.Supp.2d at 717 (the letter "clearly sets forth the procedures and time limit for obtaining a re-

view"). In fact, in at least sixteen places other than the SIB section, Kodak knew how to employ mandatory language. For example, it admonished that "[a]n affidavit of Domestic Partnership *must* be signed by you and your domestic partner." (emphasis added). Moreover, the appeals provision in the handbook does not even suggest the adverse consequences of failing to appeal within ninety days.

Under these circumstances, we conclude that Mrs. Burke was denied the opportunity for the full and fair review contemplated by 29 U.S.C. § 1133 and the DOL regulations.

## II. *Mootness*

The Plan Administrators also argue that Mrs. Burke's marriage "mooted" her efforts to qualify as a domestic partner and, consequently, the district court erred in reaching the merits of her claim. Although it did not address this issue, the district court assumed that Mrs. Burke could apply for benefits as either a spouse or domestic partner. *See Burke,* 217 F.Supp.2d at 388. We agree.

■ The Plan Administrators are vested with discretion to interpret the plan. Accordingly, their interpretation of Mrs. Burke's eligibility under the plan's provisions is subject to the arbitrary and capricious standard of review. *See Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999).

■ Their interpretation that Mrs. Burke could not qualify as a domestic partner once she was married smells of the lamp. It does not appear in their denial letter, but was explicitly raised for the first time in the ensuing litigation between the parties. Regardless of timing, their interpretation of domestic partnership and spousal eligibility as mutually exclusive is arbitrary and capricious.

Surprisingly, the Plan Administrators assert that their interpretation is "obvious." However, neither the SIB section, nor the SPD provides that once an otherwise eligible domestic partner marries, the couple forfeits any claim to benefits as domestic partners if the plan participant dies less than a year later. Such a bizarre consequence of entering into a marriage should not be left to inference.

Finally, Kodak's interpretation is not only arbitrary, but probably illegal. If, as the Plan Administrators argue, marriage "moots" domestic partnership status, the plan's requirement means that domestic partners face a year of non-coverage if they decide to get married. This result cannot be condoned. As Mrs. Burke correctly points out, "it would be blatantly discriminatory ... to provide for a forfeiture of benefits by reason of marriage alone for an otherwise qualified and eligible beneficiary."

The district court was therefore correct to consider whether Mrs. Burke could apply for benefits as either a spouse or domestic partner.

## III. *Mrs. Burke's ERISA Claims*

### A. *Standard of Review*

We review a grant of summary judgment *de novo,* "examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *See, e.g., IBM Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 423 (2d Cir.2002). Summary judgment is appropriate only if it can be established "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The parties agree that the arbitrary and capricious standard of review applies to the Plan Administrators' deci-

sion to deny benefits to Mrs. Burke for her failure to comply with the domestic partnership affidavit requirement. Under this deferential standard, we can reverse their decision only if it is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *See, e.g., Celardo v. GNY Auto. Dealers Health & Welfare Trust,* 318 F.3d 142, 146 (2d Cir.2003). Despite the parties' agreement, however, the standard of review to be applied when the question is whether the SPD complies with ERISA's disclosure requirements is not so clear. At least one court has applied a *de novo* standard. *See Rhorer v. Raytheon Eng's & Constructors Inc.,* 181 F.3d 634, 639 (5th Cir.1999). We have not decided the applicable standard. *See Layaou v. Xerox Corp.,* 238 F.3d 205, 211–12 (2d Cir.2001) ("Because we find that Xerox's SPD failed to provide adequate notice . . . under either an arbitrary and capricious or *de novo* standard of review . . . we express no view on whether the deferential standard . . . is applicable to a Plan administrator's interpretation of an SPD, where it has been determined that the SPD violates the disclosure requirements of [ERISA]."). Nor are we required in this case to resolve the applicable standard because, as in *Layaou,* Mrs. Burke would prevail under either standard.

### B. *ERISA Requirements*

ERISA requires employers to distribute SPDs describing the plan's benefits to their employees. 29 U.S.C. §§ 1022(a) & 1024(b). The SPD must be written in a manner calculated to be understood by the average plan participant and must be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the plan. *Id.* at § 1022(a). Significantly, the SPD must contain the plan's eligibility requirements for benefits as well as "the circumstances

which may result in disqualification, ineligibility or denial or loss of benefits." *Id.* at § 1022(b); *see also* 29 C.F.R. § 2520.102–3(*l* ).

ERISA further requires that: (1) the SPD's format not mislead or fail to inform participants and beneficiaries about the plan; and (2) any limitations or restrictions of plan benefits must not be minimized, rendered obscure, or otherwise made to appear unimportant. *See* 29 C.F.R. § 2520.102–2(b). Restrictions on benefits need not be disclosed "in close conjunction with the description or summary of benefits provided that adjacent to the benefit description the page on which the restrictions are described is noted." *Id.* ("cross-referencing" requirement); *see also id.* at § 2520.102–2(a) ("the use of clear cross-references [is] usually required" in an SPD).

■ Where the terms of a plan and the SPD conflict, the SPD controls. *See Heidgerd v. Olin Corp.,* 906 F.2d 903, 907–08 (2d Cir.1990). This may be startling at first blush but it makes sense when it is recalled that the SPD "will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Id.* at 907.

### C. *Kodak's SPD*

■ Kodak does not dispute that the Burkes would have satisfied the requirements for domestic partnership, if only they had filed the domestic partnership affidavit. Mrs. Burke argues that this requirement cannot be applied to her because it was not mentioned in the SIB section. We agree.

The district court noted that the eligibility requirements for domestic partnership status are spelled out sixteen times in various benefits sections of the SPD.

*Burke,* 217 F.Supp.2d at 389. In all sixteen places, this affidavit requirement states:

An affidavit of Domestic Partnership must be signed by you and your domestic partner, and filed with Kodak in order to qualify your domestic partner for plan benefits.

The affidavit must also be prepared on a form provided by the Plan Administrator.

Emphasizing the explicit domestic partnership requirements in sixteen sections of the SPD, the district court concluded that, when "read as a whole .... the affidavit requirement could not have been set forth more clearly." *Burke,* 217 F.Supp.2d at 389. However, the fact remains that none of these references is noted under SIB, which appears as a self-contained section in a 300 page handbook. Because the relevant section of the SPD omits the affidavit requirement, it conflicts with the Plan. Thus, the SPD controls. *See Heidgerd,* 906 F.2d at 908.

Significantly, of the sixteen references in the SPD, four pertain to health care, four to dental insurance, seven to dependent life insurance, and one to long-term care health insurance. As noted above, however, the SIB section of the SPD does *not* contain a cross-reference to the affidavit requirement. A cross-reference would have required minimal effort and diligence to insert. A plan participant should not be expected to infer the eligibility requirements for SIB by reference to other self-contained benefits sections of the SPD. *Cf.* 29 C.F.R. § 2520.102-2(a)-(b) (where a restriction on benefits is not "in close conjunction" with a description of the benefits, cross-referencing is generally required).

Curiously, the SIB section that discusses benefits for eligible domestic partners never defines who are "domestic partners." Two subsequent paragraphs, in contrast, provide detailed definitions of "dependent child" and "dependent parent." Participants could therefore reasonably conclude that there were no detailed requirements for other eligible SIB beneficiaries, such as domestic partners.

■ The Plan Administrators cite *Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5 (2d Cir.1997), for the proposition that the flaw in the SPD in this case was cured by Kodak's 1996 Newsletter and 1997 Benefits Update where the domestic partnership affidavit requirement surfaced. The loosest reading of *Becker* does not sanction the use of corporate literature to cure a deficient SPD. Furthermore, even if the Newsletter or Benefits Update were regarded as a proper Summary of Material Modifications under 29 § U.S.C. 1024(b)(1), we would still reject Kodak's argument. Both the Benefits Update and Newsletter were eventually superseded by a formal amendment of the SPD. Notably, its SIB section was not revised to include the affidavit requirement.

For these reasons, we find that Kodak's SPD failed to comply with the requirements of ERISA.

## IV. *The Prejudice Standard*

■ Whether ERISA requires the beneficiary to demonstrate reliance upon a deficient SPD is a question of law we review *de novo. See Long v. Flying Tiger Line, Inc. Fixed Pension Plan for Pilots,* 994 F.2d 692, 694 (9th Cir.1993) ("The interpretation of ERISA, a federal statute, is a question of law subject to *de novo* review."). The district court held that the "plaintiff has failed to demonstrate that she relied to her detriment on the plan and the parts now claimed to be deficient." *See Burke,* 217 F.Supp.2d at 390. We disagree that the record precludes a finding of detrimental reliance. However, we now adopt a prejudice standard; and we

**112**

find that the Burkes were prejudiced as a matter of law.

The circuits are divided over whether detrimental reliance or prejudice is required to recover in deficient SPD cases. The Third, Seventh and Eleventh Circuits require detrimental reliance. *See Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 n. 8 (3rd Cir.1991); *Andersen v. Chrysler Corp.,* 99 F.3d 846, 859 (7th Cir. 1996); *Branch v. G. Bernd Co.,* 955 F.2d 1574, 1578–79 (11th Cir.1992). These courts generally require an affirmative showing by the plaintiff that he read the SPD and that but for the inaccurate description he would have acted differently. *See, e.g., Collins v. Am. Cast Iron Pipe Co.,* 105 F.3d 1368, 1371 (11th Cir.1997). The First, Fourth, Eighth and Tenth Circuits allow recovery upon a showing of *either* reliance *or* prejudice. *See Govoni v. Bricklayers, Masons & Plasterers Int'l. Union of Am., Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984); *Aiken v. Policy Mgmt. Sys. Corp.,* 13 F.3d 138, 141–42 (4th Cir.1993) (*per curiam*); *Palmisano v. Allina Health Sys., Inc.,* 190 F.3d 881, 887–88 (8th Cir.1999); *Chiles v. Ceridian Corp.,* 95 F.3d 1505, 1519 (10th Cir. 1996). The Fifth and Sixth Circuits in *dicta* would require neither reliance nor prejudice. *See Hansen v. Cont'l Ins. Co.,* 940 F.2d 971, 983 (5th Cir.1991); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 137 (6th Cir.1988).

This Court has not squarely decided what the appropriate standard is. *See Feifer v. Prudential Ins. Co.,* 306 F.3d 1202, 1213 (2d Cir.2002) (declining to decide whether *either* factor is required in claim based on a deficient SPD); *see also Layaou v. Xerox Corp.,* 238 F.3d 205, 212 (2d Cir.2001); *Heidgerd v. Olin Corp.,* 906 F.2d 903, 909 (2d Cir.1990); *Howard v. Gleason Corp.,* 901 F.2d 1154, 1161 (2d. Cir.1990). As a result, there is disagree-ment in the district courts of this Circuit over the proper legal standard. *See, e.g., Moriarity v. United Techs. Corp. Represented Employees Ret. Plan,* 947 F.Supp. 43, 52 (D.Conn.1996) (applying a detrimental reliance standard), *aff'd,* 158 F.3d 157 (2d Cir.1998); *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.,* 21 F.Supp.2d 284, 296–297 (S.D.N.Y.1998) (allowing recovery for "either detrimental reliance or possible prejudice"); *Estate of Ritzer v. Nat'l Org. of Indus. Trade Unions Ins. Trust Fund Hosp., Med., Surgical Health Benefit,* 822 F.Supp. 951, 955 (E.D.N.Y.1993) (applying a "high probability of prejudice" standard); *see also Layaou,* 238 F.3d at 212 (noting that "[t]he district courts in this Circuit that have addressed this issue have also reached differing conclusions."). To promote consistency, we must now decide the appropriate standard.

■■■ At the outset, we agree that a prejudice standard is more consistent with ERISA's objective to protect the employee against inadequate SPDs. "A rule requiring ... detrimental reliance ... imposes an insurmountable hardship on many plaintiffs," especially on the estate of a deceased participant, and "[s]uch a rule hardly advances the Congressional purpose of protecting the beneficiaries of ERISA plans by insuring that employees are fully and accurately apprised of their rights under the plan." *Estate of Ritzer,* 822 F.Supp. at 955–56; *see also Springs Valley Bank & Trust Co. v. Carpenter,* 885 F.Supp. 1131, 1139 (S.D.Ind.1993) (application of the traditional detrimental reliance test would thwart the substantive objective of ERISA's SPD requirement); *cf. Edwards,* 851 F.2d at 137 ("Congress has promulgated clear directives prohibiting misleading [SPDs] .... This court elects not to undermine the legislative command

by imposing technical requirements upon the employee.").

We recognize that courts apply the amorphous prejudice standard with varying degrees of stringency. *Compare, e.g., Palmisano*, 190 F.3d at 887–88 (affirming the district court's finding of no reliance and implicitly viewing reliance and prejudice as synonymous), *with Aiken*, 13 F.3d at 142 (remanding for alternative findings on reliance and prejudice as two distinct standards). In shaping the contours of prejudice, we are sensitive to the general benefits and burdens imposed by ERISA's SPD requirement. The statute and the DOL regulations place the burden on employers to draft an SPD that is accurate, comprehensible, and clear regarding restrictions on eligibility for benefits. *See* 29 U.S.C. §§ 1022(a), 1022(b), 1024(b); 29 C.F.R. §§ 2520.102–2(b), 2520.102–3.

The consequences of an inaccurate SPD must be placed on the employer. The individual employee is powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors. *See Hansen*, 940 F.2d at 982. The employer, however, receives a substantial benefit in return: a defense against certain state law claims. *Id.* (employer benefits from "protection afforded by ERISA's preemption of state law causes of action ... which threaten considerably greater liability than that allowed by ERISA"); *see also* 29 U.S.C. § 1144(a) (ERISA provisions "supersede any and all State laws insofar as they may ... relate to any employee benefit plan"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (preemption provisions are "deliberately expansive and designed to 'establish pension plan regulation as exclusively a federal concern'") (internal citation omitted).

█ Cognizant of ERISA's distribution of benefits, we require, for a showing of prejudice, that a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD. Where a participant makes this initial showing, however, the employer may rebut it through evidence that the deficient SPD was in effect a harmless error.

The facts of *Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F.Supp.2d 284 (S.D.N.Y.1998), provide a useful illustration. In that case, the plan itself imposed a two-year statute of limitations on legal actions against an employee welfare fund. The SPD, however, omitted any mention of the statute of limitations. The normal statute of limitations under New York law would have been six years. *Id.* at 293.

The district court ruled, in accordance with Second Circuit precedent, that because the plan and the SPD were in conflict, the SPD controlled. Noting a division in the circuits over whether reliance or prejudice was required for recovery, the court adopted a "possible prejudice" approach. Applying that standard revealed that "plaintiffs were likely prejudiced by the SPD's failure to disclose the limitation on actions contained in the Plan" because New York's statute of limitations allowed an additional four years to sue. *Id.* at 296. The court then concluded that "[h]ad the Fund adequately disclosed the two-year limitation ... via the SPD, it is likely that [the plaintiff] would have learned of this limitation from his employer, his co-workers, or the union, even if he never read the SPD himself." *Id.* at 297.

This "likely prejudice" standard avoids the use of harsh common law principles to defeat employees' claims based on a federal law designed for their protection. The result is a presumption of prejudice in favor of the plan participant after an initial showing that he was likely to have been

harmed. The Manginaro court noted, however, that "[d]efendants could have rebutted this presumption of prejudice by showing, inter alia, that plaintiffs were aware of the Plan's two-year limitation on actions." Id. at 297 n. 7.

█ In this case, the relevant section of Kodak's SPD failed to mention the affidavit of domestic partnership requirement contained in the plan itself. Therefore, the SPD controls. The unresolved question is whether the Burkes were "likely prejudiced." We find that they were. The conspicuous absence of the domestic partnership affidavit requirement in the self-contained SIB section likely led the Burkes to believe that an affidavit was unnecessary for SIB benefits.

The Plan Administrators seek to rebut this presumption through the same evidence used by the district court to find a lack of detrimental reliance: the Burkes consciously decided not to apply for domestic partnership status for Kodak *health care* benefits due to their concern that Mrs. Burke would not be covered for her pre-existing stroke-related illness. Therefore, the Plan Administrators claim, the Burkes neither relied on, nor were prejudiced by, the SPD.

However, the evidence in the record is inadequate to rebut the presumption of prejudice to the Burkes. Due to Kodak's omission, the Burkes were more likely to believe that there was no affidavit prerequisite for SIB. Moreover, the Burkes' decision to forgo Kodak health care benefits would not have prevented their application for SIB.

The Plan Administrators also argue that Kodak's Newsletter and Benefits Update provided sufficient notice to the Burkes of the domestic partnership affidavit requirement. However, when viewed in the light most favorable to the Plan Administrators, the record does not establish that the

Burkes viewed these documents. Even if the Burkes had viewed these documents, they were entitled to rely on the subsequently issued SPD, which was not revised to include the affidavit requirement.

Finally, the record affirmatively supports a finding of likely prejudice. Mr. Burke designated Mrs. Burke as the primary beneficiary of his Kodak-provided life insurance, his Savings and Investment Plan Account, and his Employee Stock Ownership Plan Account. Therefore, his forfeiture of substantial lifetime benefits for his disabled domestic partner, and later spouse, is belied by his prudence in other Kodak benefits decisions.

Applying a likely prejudice standard for deficient SPD cases, we conclude that the Burkes suffered prejudice as a result of Kodak's deficient SPD.

### CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND in part, with instructions to the district court to enter judgment for Mrs. Burke.