**Phillip GLYNN, Plaintiff**

**v.**

**BANKERS LIFE AND CASUALTY COMPANY, Defendant**

**No. 3:02 CV 1802 AVC.**

United States District Court,
D. Connecticut.

Aug. 23, 2005.

John P. Derose, John P. Derose and Associates, Burr Ridge, IL, Everett Howard Madin, William R. Davis, Riscassi & Davis, P.C., Hartford, CT, for Plaintiff.

Andrew Muscato, Skadden, Arps, Slate, Meagher & Flom, New York, NY, John T. Shaban, Whitman, Breed, Abbott & Morgan, Greenwich, CT, for Defendant.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

COVELLO, District Judge.

This is an action for damages in which the plaintiff, Philip Glynn, the beneficiary of an insurance policy, claims that the defendant, Bankers Life and Casualty Company ("Bankers"), wrongfully denied payments due under the provisions of a life insurance policy. This action is brought pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, specifically under 29 U.S.C. § 1132(a)(1)(B).

The parties have filed the within cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56, arguing that the opposing party has not raised any genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

The issues presented are: 1) whether the language of the insurance contract confers upon Bankers Life discretionary authority to construe the meaning of ambiguous terms within the insurance policy; 2) whether such language thereby confers fiduciary responsibility upon Bankers Life, requiring their determinations be reviewed under an arbitrary and capricious standard; 3) whether the specific circumstances surrounding one Peter Glynn's death falls within the meaning of the term "accident," as described in the insurance policy; 4) whether the plaintiff has exhausted his administrative remedies.

For the following reasons, the court concludes: 1) the language of the insurance policy is too vague and ambiguous to be consistent with the Second Circuit's requirement that explicit language be used to reserve discretionary authority to interpret plan terms governed by ERISA; 2) accordingly, the court will review Bankers Life's denial of benefits *de novo;* 3) the developing federal common law governing ERISA-related claims indicates that an "accidental" death includes death occurring while driving under the influence of alcohol; 3) while ERISA requires that the insured exhaust all administrative remedies, Bankers Life did not articulate the appeals procedures with the requisite particularity. Moreover, the plaintiff made a timely and official notice of appeal and has made a clear and positive showing that pursuing further administrative remedies would be futile, thereby relieving the plaintiff of the exhaustion requirement.

Therefore, the defendant's motion for summary judgment (document no. 130) is DENIED, and the plaintiff's motion (document no. 127) for summary judgment is GRANTED.

## FACTS

Examination of the amended complaint, affidavits, pleadings, D. Conn. L. Civ. R. 56 statements, exhibits, and supplemental materials accompanying motions for summary judgment, and the responses thereto, discloses the following undisputed, material facts:

On June 8, 2001, Peter Glynn ("the decedent"), died as a result of injuries sustained in a single car motor vehicle accident.

The certificate of death issued by the chief medical examiner indicated that the decedent had been wearing his seat belt at the time of the accident. It noted that head injuries were the immediate cause of death and listed ethanol intoxication as a contributing condition. The autopsy revealed that the decedent's blood alcohol concentration ("BAC") was 0.17 %.

Since 1994, Johnson & Johnson had employed the decedent as a "tech leader." During the course of his employment, Johnson & Johnson rewarded the decedent with steady salary increases, regular promotions and strong performance reviews. In addition, they insured the decedent pursuant to a group accident policy issued by Bankers Life and Casualty Company designated as policy SR 84001.

During his employment, the decedent lived with his father, on Phillip Glynn ("the plaintiff"), and had designated him as the primary beneficiary of his insurance policy. The plaintiff stated that while the decedent did not have a girlfriend or regular circle of friends, the decedent did have an active life with his family. The decedent had purchased a plane ticket for a winter, 2001 vacation to Florida with his sister and was planning a road trip with his father for the following spring of 2002 to an aviation museum in Ohio and to a baseball game in St. Louis. Moreover, the plaintiff indicated that the decedent was financially secure and had not given the plaintiff any indication that he was depressed.

The decedent's insurance policy is part of Johnson & Johnson's 24–hour accident insurance plan. Johnson & Johnson issued this policy as part of their employee welfare benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), and designated Bankers as the plan administrator.

Johnson & Johnson provided the decedent with a summary plan description ("SPD") that contains the following language:

> If your claim for a benefit is denied... you will be notified in writing by the Administrator for that benefit plan [here, Bankers].
>
> ... If you disagree with the denial, [you may request a review] in writing and [send it] to the Administrator for that benefit plan [here, Bankers].
>
> ... you will be notified in writing of the final and binding decision on your claim.

Following the accident, Bankers refused to pay the proceeds of the insurance policy to the plaintiff. Bankers provided the plaintiff with two reasons for their refusal to pay: 1) ERISA, and; 2) the 0.17 % BAC. Although the insurance plan contains neither a specific exclusion for injuries sustained while intoxicated nor a specific definition of the term "accident," Bankers construed the term "accident" to mean that the decedent's death was not an "accident" within the meaning of the insurance policy and was not covered under the plan.

On March 4, 2002, one Robert Krol, Bankers' special risk benefits analyst and corporate designee assigned to administer the plaintiff's claim, issued a letter of benefits denial to the plaintiff. The letter stated, in part:

The medical records we have show Peter Glynn had a blood alcohol content of 0.17% at the time of his death...

Federal courts, in applying federal common law to claims for accidental death under ERISA plans, have uniformly held that death resulting from driving while intoxicated is not accidental.

If you wish to appeal this decision, you may do so within 60 calendar days... Include any documentation you feel supports this claim.

On April 30, 2002, the plaintiff's attorney responded with a letter that read, in part:

First, I am requesting an appeal of the decision in accordance with your letter to Mr. Glynn dated March 4, 2002... Please give me a call when you have an opportunity to discuss this matter further. It is Mr. Glynn's position that the policy is fully payable under the facts and circumstances of this case.

In a letter dated May 9, 2002, Krol responded:

We wrote to your client on March 4, 2002 (copy attached) explaining why this policy would not permit payment of benefits.

... An appeal usually consists of additional information and/or reasons why a decision should be reconsidered. We invite you to submit whatever information you have which may have a bearing on our decision.

In a letter dated May 15, 2002, the plaintiff's attorney again responded:

I have viewed the policy at issue in this case. I find no language excluding coverage for deaths which were caused solely by an accident in which alcohol may have been associated. I do note that the policy does provide specific exclusions, but not one that is relevant to the issues in this manner.

Please make immediate payment to Mr. Glynn at this time.

In the final letter dated May 22, 2002, Krol wrote on behalf of Bankers to the plaintiff's attorney. Specifically, the letter stated:

While there is no listed exclusion specifically addressing driving while intoxicated, we remind you that this is an Accident policy, paying benefits for covered losses caused by accidental bodily injuries.

Our letter of Mar 4, 2002 had explained ERISA regulations, and how federal courts have ruled on cases involving driving while intoxicated.

Without further investigation into the accident, Bankers admits that it based its decision to deny the plaintiff benefits solely on its interpretation of ERISA standards and the decedent's 0.17 % BAC.

The undisputed evidence on the record, however indicates that a 35–year–old male driver, operating a car with a BAC over 0.15 %, traveling a distance of 20 miles, has a 772 out of 10 million chance of being involved in a fatal car accident in Connecticut.

## STANDARD OF REVIEW

The court appropriately grants summary judgment when the evidentiary record shows that there are no genuine issues of material fact and that the moving party in entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most favorable to the non-moving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 provides that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims ... [and] it should be interpreted in a way that allows it to accomplish this purpose." *Celotex v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## DISCUSSION

### I. Standard of Review for Denial of ERISA Benefits.

■ Bankers first argues that a court should review determinations of eligibility and interpretations of plan terms under ERISA pursuant to an arbitrary and capricious standard. Accordingly, Bankers maintains that the court's review should be limited to the administrative record and that the court should only disturb Bankers' determination that the decedent's death was not an accident if Bankers' decision was without reason, unsupported by substantial evidence or erroneous as a matter of law.

Specifically, Bankers contends that specific language contained within the insurance contract confers upon Bankers discretionary authority to determine the claimant's eligibility for benefits and to construe ambiguous terms under the insurance plan. Bankers suggests that under ERISA, the following language implies that Bankers reserved such authority:

If your claim for a benefit is denied... you will be notified in writing by the Administrator for that benefit plan [here, Bankers].

... If you disagree with the denial, [you may request a review]. This request should be in writing in writing and sent to the Administrator for that benefit plan [here, Bankers].

The reviewer will issue a decision within 60 days.

... you will be notified in writing of the *final and binding decision* on your claim.

(emphasis added).

The plaintiff contends that the language of the insurance contract does not satisfy Bankers' burden of demonstrating that it reserved discretionary authority. Specifically, the plaintiff reminds the court that Bankers made no explicit reservation of discretionary authority and urges that the language referenced in the SPD is not susceptible to interpretation as an implied reservation of such authority. Accordingly, the plaintiff asserts that in the absence of such discretion, the court must review Bankers' determination *de novo.*

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court concluded that decisions to deny benefits under an ERISA-regulated plan, "is to be reviewed under a *de novo* standard unless the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (emphasis added). Moreover, the burden is on the plan administrator to "overcome the presumption of *de novo* review and to permit review instead under the arbitrary and capricious standard..." *Jordan v. Retirement*

*Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1269 (2d Cir.1995).

■■■ The court must determine whether a policy grants discretionary authority to the insurer from the specific language of the insurance contract. "While magic words such as 'discretion' and 'deference' may not be absolutely necessary... Courts that have found that alleged grants of discretion did not justify arbitrary and capricious review have noted the absence of such language." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995). Furthermore, since this is a claim arising under ERISA, "... ambiguities in an insurance policy are to be construed against the insurer..." particularly when such ambiguities are being interpreted to deny benefits. *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98, 107 (2d Cir.1991). Otherwise, ERISA would effectively afford less protection to employees and their beneficiaries, and "would be at odds with the congressional purposes [in enacting ERISA] of promoting the interests of employees and beneficiaries and protecting contractually defined benefits." *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98, 107 (2d Cir.1991).

■■■ Accordingly, Bankers' first contention that identifying a plan administrator impliedly reserves discretionary authority is without merit. "If the plan did not give the employer or administrator discretionary authority to construe uncertain terms, the court reviews the employee's claim as it would have any other contract claim..." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Moreover, the Second Circuit has determined that a policy stating, "trustees have final authority to determine all matters of eligibility for the payment of claims ... merely describes the trustees mandatory role in accepting or rejecting claims ..." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1270 (2d Cir.1995) (citations omitted). Naming a plan administrator merely fulfills Bankers' duty to manage the policy and handle the administration of claims.

The court cannot construe the phrase as a reservation of discretionary authority. *See Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98, 103 (2d Cir.1991) ("We cannot accept the conclusion that the discretion to establish the terms of a plan is the same as the discretion to interpret them later. Such reasoning would eliminate the *Firestone* distinction between plans that give an administrator or fiduciary discretionary authority to interpret them and those that do not").[1] Bankers only identified the identity of the administrator, but it did not identify what authority the administrator retains. Therefore, such language alone is not sufficient to confer discretionary authority.

Bankers also points to language in the "Claim Appeals" section of the SPD that states that Bankers' decision on an appeal for a claim denial is "final and binding." This language, however, is easily distinguished from the language of other plans that courts have found to contain an implied reservation of discretionary authority. For example, the Second Circuit in *Jordan v. Retirement Committee of Rens-*

---

1. Similarly, Bankers Life's contention that the clause: "Bankers Life & Casualty will evaluate your claim," also fails as support for a reservation of discretionary authority. Such language only describes Bankers Life's purely administrative and duty-bound function to process claims and generally manage their ERISA plan. As illustrated above, the Second Circuit has rejected the proposition that performing basic administrative tasks for the proper functioning of an ERISA plan constitutes an implicit grant of discretionary authority. *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98 (2d Cir.1991)

selaer Polytechnic Institute, 46 F.3d 1264 (2d Cir.1995), points the court to the type of language that unambiguously grants discretionary authority to the plan administrator: "The Retirement Committee shall pass upon all questions concerning the application or interpretation of the provisions of the plan." *Id.* at 1264. The Second Circuit in *Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995), also found that the following language grants discretionary authority: "...the NYNEX Committee shall determine conclusively for all parties all questions arising in the administration of the [Pension] plan and any such decision of such Committee shall not be subject to further review..." *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995).

The court in *Jordan v. Retirement Committee of Rensselaer Polytechnic Institute,* 46 F.3d 1264 (2d Cir.1995) also cites a number of cases involving language that is not sufficient to confer discretionary authority: *Scalamandre v. Oxford Health Plans (N.Y.), Inc.,* 823 F.Supp. 1050, 1058–60 (E.D.N.Y.1993) (lack of "explicit discretion to construe the insurance contract" requires that interpretation be reviewed *de novo* ); *Guisti v. General Elec. Co.,* 733 F.Supp. 141, 146 (N.D.N.Y.1990) ("Terms such as 'discretion', 'deference', or 'power to interpret' are not found in this clause").

Here, the provision in the SPD that refers to Bankers' "final and binding" decision regarding the appeal of the denied claim bears striking resemblance to the latter set of cases in which courts have held a contract's language too ambiguous to confer discretionary authority. The SPD is void of any hallmark terms that might suggest that Bankers has the power to interpret ambiguous plan language. The language of the plan at issue here is simply neither explicit enough to reserve discretionary authority to interpret disput-

ed terms within the plan nor broad enough to warrant sweeping discretionary authority to interpret any ambiguities arising during the administration of the plan.

Since the language contained in the SPD is neither explicit in its reservation of discretionary authority nor capable of being construed to imply that such authority is being reserved, the defendant has not raised any genuine issue of material fact as to whether they have the authority to interpret the term "accident." Accordingly, the court will review Bankers' decision to deny benefits *de novo.*

## II. *De Novo* Review of the Denial of Benefits

### A. The *Critchlow* Standard Governs

█ Bankers next argues that even under *de novo* review, the denial of benefits is still appropriate. Specifically, Bankers contends that even without discretionary authority, a judicial construction would still conclude that the decedent's death does not fall within the meaning of the term "accident."

The plaintiff responds that the Second Circuit has determined that under ERISA, hazardous activities resulting in death are deemed an "accident" as a matter of law only if death is "highly likely" to result from that activity. Here, the decedent has presented uncontested statistical evidence that indicates that death while driving intoxicated is not "highly likely" to occur.

In *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1081 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990), the United States Supreme Court developed a two-part test for determining whether a particular death is "accidental." However, in *Critchlow v. First UNUM Life Ins. Co. of America,* 378 F.3d 246 (2d Cir.2004), the Second Circuit refined the *Wickman* analysis, and illus-

trated how that standard is to be applied in the Second Circuit:

> [1a) ] the court first asks whether the insured subjectively lacked an expectation of death or injury; [1b) ] if so, the court asks whether the suppositions that underlay the insured's expectation were reasonable, from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's characteristics and experiences; and [2) ] if the subjective expectations of the insured cannot be ascertained, the court asks whether a reasonable person, with the background and characteristics similar to the insured, would have viewed the injury as substantially certain to occur as a result of his intentional conduct.

*Critchlow v. First UNUM Life Ins. Co. of Amer.,* 378 F.3d 246, 258 (2d Cir.2004)(quoting *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1127–28 (9th Cir.), *cert. denied,* 537 U.S. 1067, 123 S.Ct. 602, 154 L.Ed.2d 556 (2002)).

*Critchlow* involved a young man who died during "autoerotic asphyxia" ("AEA"). AEA refers to the practice of deliberately inducing hypoxia (a state of diminished oxygen supply to the brain) with the intention of producing sexual arousal. In *Critchlow,* the decedent had tied ligatures to various parts of his body, including his neck, to limit the flow of oxygen to his brain.

While the focus of the *Critchlow* court's analysis is on whether the decedent's injuries were self-inflicted, the court recognized that the same analysis applies by analogy to determining whether a death is accidental: "... having determined ... that Critchlow had a subjective expectation of survival and that his expectation was objectively reasonable because death was not likely to result, we must conclude that Critchlow's death was accidental ..."

*Critchlow v. First UNUM Life Ins. Co. of Amer.,* 378 F.3d 246, 264 (2d Cir.2004).

Although the district court concluded on the basis of Critchlow's injuries that there was "no evidence in the record that would support a finding that decedent's death was not the result of an intentionally inflicted injury," the Second Circuit Court of Appeals disagreed. *Critchlow v. First UNUM Life Ins. Co. of Amer.,* 378 F.3d 246, 260 (2d Cir.2004). The Second Circuit concluded that Critchlow's death was unintended and that he subjectively expected to survive:

> The conclusions that Critchlow's death was subjectively unintended and that he subjectively expected to survive were amply supported by the police reports that Critchlow had escape measures built into his binds... attached to a set of counter weights which were meant to give him an 'out' if he started to lose consciousness.

*Id.* at 259. Moreover, just hours before his death, "Critchlow had shopped at a grocery store and left items on the kitchen counter indicating that he was planning supper." *Critchlow v. First UNUM Life Ins. Co. of Amer.,* 378 F.3d 246, 260 (2d Cir.2004). On that basis, the court concluded that, "Given this record, no rational fact finder could fail to conclude that Critchlow intended and expected to survive his February 27, 1999 episode of autoerotic asphyxiation." *Id.*

Given the standard that the Second Circuit laid out in *Critchlow,* there is ample evidence to conclude that the decedent also intended to survive his car ride home the evening of the accident.

The record indicates that the decedent was thriving at Johnson & Johnson. His employment record indicates that he received regular raises, periodic promotions, and consistent performance reviews that

repeatedly describe his work habits as "exceeding expectations." Furthermore, the plaintiff indicated in a sworn affidavit that the decedent had plans to meet his sister the following day, had purchased an airline ticket for a vacation to Florida that November, and was planning a road trip to Ohio and St. Louis the following spring. The plaintiff also stated that the decedent was financially secure and had not given any indication to anyone that he was depressed. Moreover, the chief medical examiner indicated that when the decedent was found in his car, his seatbelt was fastened across his lap.

The record illustrates that the decedent had a very stable short-term employment and financial situation as well as established long-term leisure plans. The court agrees with the plaintiff that Bankers' attempt to characterize the decedent's injuries as somehow self-inflicted is without merit. More than mere conclusory statements of the decedent's possible subjective intent are needed to raise a genuine issue of material fact. The record is void of any evidence, medical or otherwise, that the decedent intentionally inflicted any injury upon himself.

### B. Reasonableness of the Decedent's Expectations

Once the court has ascertained Peter Glynn's subjective expectations, *Critchlow* requires that the court next determine whether those expectations were reasonable in light of the particular hazardous activity that the decedent engaged in. *Critchlow* strictly applies the *Wickman* standard requiring the "reasonableness" of the decedent's expectations of survival be evaluated by determining whether death or serious injury was "highly likely" or "substantially certain" to occur. *Critchlow*

*v. First UNUM Life Ins. Co. of America,* 378 F.3d 246, 258 (2d Cir.2004).

The *Critchlow* court concluded that "[b]ecause death by autoerotic asphyxiation is *statistically rare,* [the decedent's] expectation of survival certainly was reasonable." *Critchlow v. First UNUM Life Ins. Co. of Amer.,* 378 F.3d 246, 258 (2d Cir.2004) (quoting *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121 (9th Cir.) *cert. denied,* 537 U.S. 1067, 123 S.Ct. 602, 154 L.Ed.2d 556 (2002)(emphasis added)). The court maintained that "[e]ven if we could not determine [the decedent's] subjective expectations, the same conclusion would be warranted under a purely objective analysis because death is not the 'substantially certain' result of [AEA] . . ." *Id.* Moreover, the *Critchlow* court concluded: "Given the uniform medical and behavioral science evidence indicating that autoerotic activity ordinarily has a nonfatal outcome, the likelihood of death from autoerotic activity falls far short of what would be required to negate coverage under an accidental death policy." *Critchlow v. First UNUM Life Ins. Co. of America,* 378 F.3d 246, 258 (2d Cir.2004).

Accordingly, the court may rely on statistical evidence to determine whether death while driving intoxicated is "substantially certain" to occur. The undisputed evidence on the record indicates that a male driver, 35 years or older, driving with a blood alcohol level above 0.15%, and traveling a distance of 20 miles, has a 772 in 10 million chance of being involved in a fatal car accident. While Bankers disputes the proposed distance that Peter Glynn traveled on the night of the accident, the court is convinced that no proposed alternative would augment the reasonableness of relying on a 99.999228% chance of survival.[2]

---

**2.** Bankers asserts that a driver with a BAC of

0.15 % is 380 times more likely to die in a

The clandestine nature of the behavior associated with AEA understandably deprived the *Critchlow* court of access to any statistics regarding the chance of being killed while involved in an autoerotic act. However, the court appeared to be satisfied that "AEA practitioners did not intend to be killed" and that, "more often than not, such activities had a non-fatal outcome." *Critchlow v. First UNUM Life Ins. Co. of Amer.*, 378 F.3d 246, 258 (2d Cir.2004). While the court does not interpret that to mean that reasonableness is fixed at a "better than 50%" chance of survival, the court is confident that the statistical chance of being involved in a fatal accident while intoxicated, satisfies the Second Circuit Court of Appeals' requirement that death not be substantially certain to occur.

Accordingly, the court concludes that the decedent's subjective expectation was to return home safely and that expectation was reasonable under the circumstances. *Accord West v. Aetna Life Ins. Co.*, 171 F.Supp.2d 856, 904 (N.D.Iowa 2001). (concluding that common knowledge should actually tell a person "that he or she is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol-related crash, and far more likely to arrive home than to be either arrested, injured, or killed.")

The evidence indicates that the decedent subjectively intended to return home safely and the statistics indicate that those expectations were well within reason. Accordingly, the court concludes that the de-

cedent's death was an "accident" as a matter of law.

## III.  Exhaustion of Administrative Remedies

■ Bankers next contends that the plaintiff failed to exhaust his administrative remedies as required under ERISA as a prerequisite to initiating this action. Specifically, Bankers maintains that the plaintiff failed to provide further documentation for the requested claim review. Furthermore, while Bankers contends that the plaintiff "sought a claim review from Bankers, there is no evidence on the record that he appealed Bankers Life's denial to Johnson & Johnson."

The plaintiff maintains that he exhausted all of his administrative remedies as set forth by Bankers. Specifically, the plaintiff contends that the language contained in the appeals section of the SPD is too vague to establish a binding appeals procedure, and therefore, no exhaustion was required. Moreover, the plaintiff insists that since Bankers relied exclusively on its own interpretation of ERISA regulations and the report concerning the decedent's BAC, further administrative appeals or the production of additional documents would have been futile, and the plaintiff is thereby released from any exhaustion requirement.

■ The Second Circuit has held that "ERISA . . . requires that all benefit plans provide for carrier review . . . Thus, exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kenne-*

---

single vehicle crash than a non-drinker. The court acknowledges, and the plaintiff agrees, that driving with elevated blood alcohol content is irresponsible and dangerous. However, Bankers' reasoning is misplaced. The standard is not whether death or serious injury is "substantially more likely" when compared to some other activity. The relevant

inquiry is whether "the deceased had a subjective expectation of survival, and . . . that such expectation was objectively reasonable, *which it is if death is not substantially likely to result from the insured's conduct.*" *Critchlow v. First UNUM Life Insurance Co.*, 378 F.3d 246, 263 (2d Cir.2004) (emphasis added).

dy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir.1993). In addition:

> [the SPD and letter of denial] must notify the claimant of the appeals procedure under the particular plan. A written notice of denial must be comprehensible and provide the claimant with the information necessary to perfect his claim... A notice that fails to substantially comply with those requirements relieves the insured of his duty to exhaust his administrative remedies.

Burke v. Kodak Retirement Income Plan and Kodak Retirement Income Plan Comm., 336 F.3d 103 (2d Cir.2003). See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503–1. Moreover, "[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir.1993) (emphasis added).

There is ample evidence on the record to support the conclusion that the plaintiff has made a clear and positive showing that pursuing further administrative remedies would be futile releasing him from that requirement.[3]

The Second Circuit has discussed two instances where the plaintiffs failed to demonstrate futility. The plaintiffs in Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 595 (2d Cir.1993), failed because "[t]here is no evidence in the record that any ERISA plaintiff even *notified* Empire of any disputed claim." (emphasis in original). Similarly, in Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 133 (2d Cir.2001), the Second Circuit did not excuse the exhaustion requirement because the "correspondence did not amount to an unambiguous application for benefits" and an official administrative denial of the plaintiff's claims was never issued. The Davenport court specifically cites to Wilson v. Globe Specialty Products, 117 F.Supp.2d 92, 99 (D.Mass.2000) to support its determination that the plaintiff had not demonstrated futility: "[While the] plan administrator arguably [had] evidenced an intent to refuse [the plaintiff's] claim, [the] court required exhaustion because it would not predict how [the administrator] would have decided [the plaintiff's] claim on review." Wilson v. Globe Specialty Products, 117 F.Supp.2d 92, 99 (D.Mass.2000).

Bankers, however, gave the plaintiff an official letter of claim denial. The plaintiff proceeded to make a timely and official notice of appeal and maintained correspondence with the plan administrator for nearly three months after the initial refusal of benefits. Moreover, the correspondence of Bankers' special risk benefits analyst, one Robert Krol, indicated Bankers had a blanket policy of denying life insurance benefits for ERISA claims involving intoxicated drivers.

---

**3.** In Burke v. Kodak Retirement Income Plan and Kodak Retirement Income Plan Committee, 336 F.3d 103 (2d Cir.2003), the Second Circuit concluded: "the language [outlining the appeals procedure] is opaque... the use of the word 'should' is grossly uninformative... Kodak could easily have used unambiguous mandatory language." Bankers' use of the words "you *can* apply for a claim review...," "This request *should* be in writing..." and "if you wish to appeal...you *may* do so within 60 calendar days..." does not comport with the Second Circuit's requirement of explicit and mandatory language. See Burke, 336 F.3d at 109 (2d Cir.2003). However, like the Burke court, it is not necessary here to hold that "can," "should" or "usually" is never mandatory, as the plaintiff has made a clear and positive showing that even if he were bound by the vague appeals parameters, it would have been futile to pursue them any further.

On April 30, 2002, the plaintiff's attorney submitted a letter to Bankers that officially requested an appeal in accordance with the letter of denial. In response, on May 9, 2002, Krol stated that an appeal *"usually* consists of additional information and/or reasons why a decision should be reconsidered" (emphasis added). Krol also referenced the original denial letter to reiterate Bankers' reliance on federal law and ERISA regulations. On May 15, 2002, the plaintiff's attorney then submitted a letter explaining that he could find no applicable exclusions for driving while intoxicated within the policy, that Bankers had therefore improperly denied benefits and requested immediate payment.

On May 22, 2002, Krol responded by denying the significance of the absence of a specific exclusionary clause by relying on ERISA regulations and the federal court's "uniform" position on cases involving driving while intoxicated. Krol reiterated Bankers' policy of denying ERISA benefits for deaths involving intoxicated drivers.

It is undisputed that the plaintiff formally requested an appeal to Bankers and included the reasons why he felt Bankers had improperly denied benefits. In the exchange of correspondence it became clear that additional documentation would not have affected, and indeed was not relevant to the issue under dispute on appeal. It was Krol who repeatedly aligned Bankers' position with ERISA regulations, highlighting that the center of the dispute was on the proper application of federal law. Krol made it unequivocally clear that Bankers' stance was entrenched in the belief that ERISA permitted the universal denial of benefits for deaths resulting from driving while intoxicated. Krol articulated Bankers' blanket policy of denying benefits for accidents occurring while the insured was intoxicated. *See e.g. Harrow v. Prudential Ins. Co. of America,* 279 F.3d 244,

250 (3d Cir.2002) (factors weighed in the evaluation of insured's claim of futility include *inter alia* "...(1) whether plaintiff diligently pursued administrative *relief* ... (3) *existence of a fixed policy of denying benefits* ... (5) testimony of plan administrators that any administrative appeal was futile")(emphasis added).

Accordingly, the plaintiff has made a clear and positive showing the futility of pursuing further administrative remedies. The plaintiff made a timely notice of appeals, fulfilled the only mandatory appeals requirement, and maintained correspondence with the plan administrator for a period of almost three months following the initial letter of denial. Accordingly, the plaintiff has demonstrated that any further pursuit of such remedies would have been futile.

Furthermore, the evidence does not support Bankers' argument that an appeal to Johnson & Johnson was a requirement of the administrative appeals process. While giving a brief overview of the review process, the SPD specifically refers the insured to the letter of denial to obtain the specific appeals procedure for a given insurance plan. Neither the denial letter nor any further correspondence between the parties indicated any need to perfect an appeal to Johnson & Johnson.

Moreover, while there is language in the SPD to suggest that an appeal to Johnson & Johnson was appropriate, there is also evidence in the record that suggests that Bankers never contemplated such an appeal. The district court of New Jersey in *Precopio v. Bankers Life & Casualty Co. et al.,* Civil No. 01–5721 (D.N.J. Aug. 10, 2004), passed upon this exact language in Bankers' SPD in a very similar action less than a year ago. There, Bankers conceded that an appeal to Johnson & Johnson was not permitted and that such language in the SPD was the result of a 1999

drafting error. *Id.* at 7, n. 2. Accordingly, an appeal to Johnson & Johnson was not required.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 130) is DENIED, and the plaintiff's motion (document no. 127) for summary judgment is GRANTED.